**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN SECTION**

ERIC A. ANDERSON,

      Plaintiff,

v.                                                                 No. 2:19-cv-02889-MSN-cgc

TARGET STORES, INC.,

      Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant Target Stores, Inc.'s Motion for Summary Judgment, (ECF No. 27), filed on March 15, 2021.[1] Plaintiff submitted his response in opposition on April 12, 2021. (ECF No. 30.) Defendant then filed its reply on April 26, 2021. (ECF No. 31.) For the reasons below, the Court **GRANTS** Defendant's motion.

## <u>Background</u>

This case involves allegations of workplace discrimination due to race, age, and gender. (*See generally* ECF No. 8.) Plaintiff Eric A. Anderson, a 62-year old Black male,[2] began working for Defendant Target Stores, Inc. ("Target" or "Defendant") as a Sales Floor Team Lead in August 2004. (ECF No. 30-1 at PageID 321–22; ECF No. 30-21 at PageID 453.) He was later promoted to Senior Team Leader-Food ("STL-Food") in November 2008 and continued in that position until

---

1.  Defendant identifies itself as "Target Corporation," rather than "Target Stores, Inc." (ECF No. 27 at PageID 74.) The difference has no bearing on the Court's analysis.

2.  Plaintiff was sixty (60) years old at the time of his termination. (ECF No. 31-2 at PageID 545.)

his termination on March 26, 2018. (*Id.* at PageID 322.) As the STL-Food, Plaintiff's primary job responsibilities included overseeing produce, establishing routines, and training employees. (*Id.*; *see also* ECF No. 27-6.) It is undisputed that team leads, like Plaintiff, were held to a higher standard than regular team members. (ECF No. 30-1 at PageID 323.) Indeed, along those lines, Plaintiff asserts that he wanted his "work and behavior to exemplify honesty, hard work and trust[.]" (ECF No. 30-21 at PageID 453.)

## A. Procedural Background

Plaintiff commenced this matter alleging discrimination based on his race and gender in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and discrimination based on his age in violation of Age Discrimination in Employment Act ("ADEA") on December 28, 2019. (ECF No. 6.) Plaintiff then filed his amended complaint on December 30, 2019. (ECF No. 8.)

Defendant filed its motion for summary judgment on March 15, 2021. (ECF No. 27.) Plaintiff then filed his response on April 12, 2021. (ECF No. 30.) Defendant filed its reply on April 26, 2021. (ECF No. 31). In conjunction with the filing of its reply, Defendant also filed a motion to strike certain portions of Plaintiff's affidavit submitted with his response. (ECF No. 32 at PageID 563.) Plaintiff filed his response in opposition to Defendant's motion to strike on May 3, 2021. (ECF No. 33.)

## B. Interactions with Ms. Morella and Ms. Jones

During his tenure, Plaintiff reported to Diana Morella and Hillary Jones. Starting in either 2014 or 2016,[3] Diana Morella, a 59-year old White female, became Plaintiff's direct supervisor.

---

3. The parties dispute when Ms. Morella became Plaintiff's direct supervisor. (ECF No. 30-1 at PageID 322.) Regardless of the timing, it is undisputed that Ms. Morella was one of Plaintiff's supervisors at the time of his termination and at all relevant times. (*See* ECF No. ECF No. 27-12 at PageID 255; ECF No. 31-2 at PageID 534.) More important, as part of his objection to Defendant's Statement of Facts, Plaintiff cites deposition testimony of Ms. Morella (Morella

(ECF No. 30-1 at PageID 322.)   Ms. Morella continued in that role until her transition into a job in Human Resources.  (*Id.*)  Ms. Morella did not issue any corrective action against Plaintiff during her stint as his direct supervisor.  (*Id.* at PageID 323.)

Defendant asserts that as part of Ms. Morella's supervisory duties, Ms. Morella would meet with the executive team every Monday to discuss scheduling.  (ECF No. 31-2 at PageID 535–36.) Plaintiff further adds that he would meet with Ms. Morella every other Monday.  (ECF No. 31-2 at PageID 535–36.)  Plaintiff asserts that Ms. Morella would discuss complaints made by White team members at these bi-weekly meetings.  (ECF No. 31-2 at PageID 535–36.)  It is undisputed that Ms. Morella would relay the concerns from White team members that Plaintiff assigned them the hardest jobs.  (ECF No. 31-2 at PageID 535–36.)   In turn, Ms. Morella suggested that Plaintiff assign those jobs to Black team members.  (ECF No. 31-2 at PageID 536.)

Sometime in 2016, Ms. Morella approached Plaintiff and another Target employee, Tyler Cain (a Black male), while they were doing store inventory.  (ECF No. 31-2 at PageID 534–35.) The exact content of the conversation that occurred between Ms. Morella, Plaintiff, and Mr. Cain is disputed by the parties.  (ECF No. 31-2 at PageID 534–35.)  Plaintiff contends that Ms. Morella discussed the "horror that she would feel if one of her daughters dated a black male."  (ECF No.

---

depo. p. 19).  (*See* ECF No. 30-1 at PageID 322.)  The Court, however, cannot find the deposition testimony Plaintiff relies on after searching the record.  In other words, Plaintiff has not presented that testimony to the Court so the Court cannot confirm whether it supports (or contradicts for that matter) Plaintiff's assertion.  The Court will not deem it a proper objection if either party relies on evidence not properly before the Court.  *See* Fed. R. Civ. P. 56(c), (e); *see also Akines v. Shelby Cty. Gov't*, 512 F. Supp. 2d 1138, 1147 (W.D. Tenn. 2007); L.R. 56.1(b).  Moreover, Plaintiff also at times failed to provide specific citations to the record when objecting to Defendant's Statement of Facts.  (*See, e.g.*, ECF No. 30-1 at PageID 326.)  Again, this is not proper, and the Court will not consider an objection not properly supported.  *See* Fed. R. Civ. P. 56(c); *Akines*, 512 F. Supp. 2d at 1147 ("The Court is not required to sift through pleadings to determine if the non-moving party has sufficiently responded to the statement of undisputed material facts."); L.R. 56.1(b), (d).

31-2 at PageID 535.)  Defendant asserts that Plaintiff mischaracterized the content of Ms. Morella's statement based on the deposition testimony cited.  (*Id.*)

Plaintiff also describes in his affidavit an incident in 2018 involving Ms. Morella where Ms. Morella informed Plaintiff of an accusation of sexual harassment made against him by a White employee.  (ECF No. 30-21 at PageID 454.)  Plaintiff asserts that Ms. Morella told him not to report the incident to corporate and that she would handle it.  (*Id.*)  According to Plaintiff, he was never informed that the complaint was ultimately found baseless.  (*Id.*)  He questions whether such a complaint was ever actually made.  (*Id.*)

Ms. Morella transitioned into a role in HR sometime in 2018.  (ECF No. 30-1 at PageID 322; ECF No. 30-21 at PageID 454.)  She was then replaced by Hillary Jones, a White female. (ECF No. 30-1 at PageID 323; ECF No. 30-21 at PageID 454.)  Plaintiff seemingly had a strained relationship with Ms. Jones.

According to Plaintiff, Ms. Jones would belittle him in front of other employees by explaining basic aspects of his job.  (ECF No. 30-1 at PageID 337, 30-21 at PageID 455.)  In Plaintiff's view, this caused those working under him to start slacking on assignments and to question Plaintiff's directives.  (ECF No. 30-21 at PageID 455.)  This treatment from Ms. Jones purportedly caused Plaintiff to lodge a complaint with Store Director Cliff Townsend.  (ECF No. 30-1 at PageID 337.)  It is undisputed that Plaintiff received no corrective action from Ms. Jones during his tenure.  (ECF No.  31-2 at PageID 535.)

## C.  Clock-in Procedures

As with most jobs, Target employees are required to clock in and out of work every day. (ECF No. 30-1 at PageID 323–24.)  Further, Target employees are only allowed to clock in or out for themselves.  (*Id.*)

4

When a team member forgets to clock in, a human resources team member would have that individual submit a "punch correction" form to identify the time they failed to "punch" in or out. (*Id.*) If a Target employee wished to confirm on their own whether they missed a punch, they could either: (1) check a list that was printed daily or (2) use a mobile app. (*Id.* at PageID 324–25.) A team member submitting a punch correction would sign the form and hand it over to HR. (*Id.* at PageID 324.) HR would then make the notation in the system. (*Id.*)

It is undisputed that Target had a policy that required employees to clock out for their meal period ("meal-break policy') before the start of the employee's fifth or sixth hour of work. (*Id.* at PageID 325.) These meal periods are unpaid and last thirty (30) minutes. (*Id.*; ECF No. 31-2 at PageID 540.)

Defendant asserts that it is a terminable offense for an HR team member to fix another team member's punches to have it comply with the meal-break policy. (ECF No. 30-1 at PageID 328.) Plaintiff argues that HR team members regularly assisted other team members in submitting punch corrections to comply with Target's meal-break policy. (ECF No. 30-1 at PageID 328; ECF No. 30-21 at PageID 456.) Plaintiff specifically asserts that HR team member Valerie Scott would instruct him on submitting punch corrections to ensure his punches complied with the meal-break policy. (*Id.*) Ms. Scott, however, swears that she never instructed Plaintiff or any other team member to enter a false punch correction nor did she instruct team members as to what time to input when submitting a correction. (ECF No. 27-4 at PageID 120.)

## D. <u>Investigation into Complaints Concerning Plaintiff</u>

Starting in 2017, Ms. Morella began receiving complaints from team members concerning Plaintiff taking excessive and prolonged breaks.[4] (ECF No. 30-1 at PageID 328–29; ECF No. 31-2 at PageID 536.) These complaints came from team members Kenneth Washington (a Black male), Randall Logan (a Black male), in addition to other unnamed team members. (ECF No. 30-1 at PageID 328–29; ECF No. 31-2 at PageID 536.) Mr. Washington made several complaints concerning Plaintiff taking excessive breaks and prolonged lunches. (ECF No. 30-1 at PageID 330.) Mr. Logan made similar complaints as well. (*Id.*)

Ms. Morella did not initially act on these complaints.[5] (ECF No. 30-1 at PageID 330–31.) However, she decided to act after she continued to receive similar complaints. (*Id.* at PageID 330–31.) This led Ms. Morella to contact Executive Team Lead- Asset Protection (ETL-AP) Gary Alexander (a Black male). (ECF No. 30-1 at PageID 331–32.) Ms. Morella asked Mr. Alexander to investigate whether Plaintiff was taking excessively long breaks.[6] (*Id.* at PageID 332.) As the ETL-AP, Mr. Alexander monitors Target employees' compliance with clock-in and clock-out

---

4. Plaintiff's objections to Defendant's Statement of Facts 31, 32, and 33 fail to refute the assertions contained within. There are two problems with these objections by Plaintiff: (1) his affidavit does not respond to the factual assertion and (2) Plaintiff cites deposition testimony that is not currently before the Court nor elsewhere in the record. Plaintiff states in his affidavit that Ms. Morella would only discuss with him the complaints from White team members. (ECF No. 30-21 at PageID 454.) That assertion by Plaintiff in no way refutes whether Ms. Morella received complaints from other team members, especially these members concerning Plaintiff's excessive and prolonged breaks. Further, Plaintiff cites deposition testimony that is not in the record before the Court so the Court cannot confirm its contents. Accordingly, Plaintiff has not properly objected to this Statement of Fact and it is deemed **ADMITTED** by the Court.

5. Plaintiff's objection to Defendant's Statement of Fact 35 is nonresponsive to the assertion contained therein. Further, Plaintiff relies on deposition testimony not currently in the record.

6. Plaintiff's objection to Defendant's Statement of Fact 40 is without merit. First, it does not refute the assertion contained within Defendant's statement of fact. Second, it is both conclusory and asserts a legal argument. Therefore, Plaintiff has not lodged a proper objection.

procedures. (*Id.* at PageID 332.) Further, as part of his duties, Mr. Alexander will conduct investigations into punch violations. (*Id.* at PageID 332.)

Ms. Morella approached Mr. Alexander about two punch corrections by Plaintiff that appeared to violate Target's meal-break policy. (ECF No. 30-1 at PageID 332–33.) This prompted Mr. Alexander to begin his "reverse investigation," where he reviews punches on the dates at issue and thirty (30) days prior. (*Id.* at PageID 333.) Mr. Alexander's investigation concluded that Plaintiff submitted false punch corrections on the dates of February 26, 2018, and March 12, 2018, and committed time theft by doing so. (*Id.* at PageID 333–35.)

Records for February 26, 2018, show that Plaintiff made the following punches: 11:30 a.m., 5:15 p.m., 5:46 p.m., and 10:48 p.m. (*Id.* at PageID 333.) Upon closer inspection, Plaintiff's punch at 5:15 p.m. was a punch correction that Plaintiff submitted two (2) days after. (*Id.*)

Video footage from that day shows that Plaintiff left the store at 5:59 p.m. and later returned at 6:25 p.m. (*Id.* at PageID 334.) Thus, from 5:46 p.m., till his return to the store at 6:25 p.m., Plaintiff was not working for thirty-nine (39) minutes. Plaintiff had thirty (30) minutes for his lunch break. (ECF No. 31-2 at PageID 540.) Plaintiff admits that the video footage in conjunction with his punches appear to show him breaking Target's meal-break policy and committing time theft. (ECF No. 30-1 at PageID 334.)

Records for March 12, 2018, show that Plaintiff made the following punches: 12:00 p.m., 6:06 p.m., and 8:39 p.m. (ECF No. 30-1 at PageID 335.) Plaintiff submitted two punch corrections a week later, which included punches for 5:35 p.m. and 6:06 p.m. (*Id.*) Surveillance footage shows Plaintiff leaving the store at 6:13 p.m. (*Id.*) He reenters the store at 6:54 p.m. (*Id.*) Plaintiff again admits that he appears to have violated Target's policies. (*Id.*)

Plaintiff was aware that team members could be subject to corrective action, including termination, for submitting inaccurate time clock information. (*Id.* at PageID 326.) Further, falsification of company documentation is a terminable offense. (*Id.* at PageID 328.) Defendant submits that submitting incorrect punch corrections is akin to submitting false documentation. (*Id.*)

**E.  Plaintiff's Termination**

In the aftermath of Mr. Alexander's investigation, Ms. Morella, along with Ms. Jones, met with Plaintiff on March 21, 2018, to discuss Plaintiff's actions on the dates at issue. (ECF No. 30-1 at PageID 335–36.) Ms. Jones and Ms. Morella expressed their confusion concerning Plaintiff's actions because it appeared that he intentionally violated Target's policies. (ECF No. 30-1 at PageID 335–36.) Plaintiff shared their confusion and claimed that he does not steal, meaning he does not steal time. (*Id.* at PageID 336.) Notably, Plaintiff did not offer an explanation concerning his actions.

A few days later, on March 23, 2018, Plaintiff was called into the office of Cliff Townsend, Store Director, along with Ms. Jones and Ms. Morella to explain what happened on the dates at issue.[7] (*Id.*) Plaintiff did not offer an explanation at that time either, stating that he could not remember what happened on those dates. (*Id.*)

Just three (3) days later, on March 26, 2018, Plaintiff again was called into Mr. Townsend's office. (*Id.*) Ms. Jones and Ms. Morella were also present. (*Id.*) Plaintiff was then informed that

---

7. Plaintiff objects to Defendant's Statement of Fact 57 to the extent that it asserts that Mr. Townsend is Black. (ECF No. 30-1 at PageID 336.) Putting aside the dispute as to Mr. Townsend's racial identity, Plaintiff's objection does not refute any other portion of Defendant's Statement of Fact. Thus, Plaintiff has failed to raise a proper objection to the rest of Statement of Fact 57.

he was being terminated for falsifying documents. (*Id.*) It is disputed who exactly informed Plaintiff that he was being terminated. Defendant asserts that Mr. Townsend informed Plaintiff that he was being terminated. (*Id.*) Plaintiff asserts that Ms. Jones was the one who terminated him. (*Id.*) Defendant counters by arguing that Ms. Jones' alleged involvement at Plaintiff's termination meeting consisted solely of reading off paperwork handed to her by Mr. Townsend. (ECF No. 31-2 at PageID 548.)

The parties also dispute the level of involvement by Ms. Jones with Plaintiff's investigation and termination. Defendant asserts that Ms. Jones was not involved in the decision to terminate Plaintiff nor was she involved in the investigation into Plaintiff's alleged time theft. (ECF No. 30-1 at PageID 337.) Plaintiff disputes this but it is not clear to what extent.[8] Plaintiff only asserts that Ms. Jones was involved at his termination meeting. (ECF No. 30-21 at PageID 457; ECF No. 31-2 at PageID 548.)

It is undisputed that Ms. Morella stated to Plaintiff at this meeting that "I bet you wished you had retired now." (ECF No. 31-2 at PageID 548.) Plaintiff was eventually given a separation notice confirming that he was discharged for submitting false documents. (*Id.*)

## **Standard of Review**

Federal Rule of Civil Procedure 56 permits a party to move for summary judgment — and the Court to grant summary judgment — "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the presence or absence of genuine issues of material facts must support its position either by "citing to particular parts of materials in the record," including depositions,

---

8. In contesting Ms. Jones' level of involvement, Plaintiff again relies on deposition testimony (Jones depo. 60) that is not before the Court.

documents, affidavits or declarations, stipulations, or other materials, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may discharge this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or simply "by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Where the movant has satisfied this burden, the nonmoving party cannot "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita*, 475 U.S. at 586; Fed. R. Civ. P. 56). The nonmoving party must present sufficient probative evidence supporting its claim that disputes over material facts remain and must be resolved by a judge or jury at trial. *Anderson*, 477 U.S. at 248–49 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *see also White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475–76 (6th Cir. 2010). A mere scintilla of evidence is not enough; there must be evidence from which a jury could reasonably find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252; *Moldowan*, 578 F.3d at 374.

The Court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id.* at 254. Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of the evidence, on a motion for summary judgment the Court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252–53.

Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323. The Court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id.* at 327.

<u>Analysis</u>

This is a workplace discrimination case in which Plaintiff alleges that Defendant discriminated against him due to his race, gender, and age. (*See* ECF No. 8 at PageID 13, 17–18.) Plaintiff brings this action pursuant to Title VII and the ADEA. (*Id.*) Before the Court turns to the merits of Defendant's arguments that Plaintiff's claims fail as a matter of law, the Court first addresses Defendant's motion to strike. (ECF No. 32.)

A. **<u>Defendant's Motion to Strike</u>**

Defendant argues in its motion that portions of Plaintiff's affidavit should be struck because it contradicts his prior deposition testimony or is inadmissible. To briefly set the stage. For an assertion to be properly supported under Rule 56, a party must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, **affidavits or declarations**, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;

Fed. R. Civ. P. 56(c)(1)(A) (emphasis added). Affidavits or declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

With respect to what evidence is admissible for purposes of summary judgment, while "[t]he proffered evidence need not be in admissible form, . . . its content must be admissible." *Bailey v. Floyd Cty. Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997). As a result, the usual evidentiary prohibition on hearsay is applicable to summary judgment, absent some recognized exception to the restriction. *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994).

Where one party argues that the opposing party has submitted evidence which should not be considered, "[s]ubdivision (c)(2) [of Rule 56] provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment. Because the objection functions much the same as an objection at trial, "[t]here is no need to make a separate motion to strike." *Id.*; *see also Daucus v. Commercial Marine Servs.*, No. 2:15-cv-2646-JPM-cgc, 2018 WL 6499375, *2 (W.D. Tenn. Sept. 6, 2018) ("This Court . . . construes motions to strike evidence offered in support of motions for summary judgment as evidentiary objections pursuant to Local Rule 56.1(e).") The Court will now consider Defendant's evidentiary objections.

    *I.*    *Whether Plaintiff's affidavit asserts contradictory testimony*

Defendant's first objection argues that Plaintiff has submitted testimony in his affidavit that contradicts his prior deposition testimony. (ECF No. 32 at PageID 563.) Defendant argues that Plaintiff has changed his story concerning the number of times Ms. Morella questioned him about his intent to retire. (*Id.* at PageID 564.) To recap, Plaintiff mentions a single comment by Ms. Morella, "I bet you wish that you had retired," in his amended complaint. (*See* ECF No. 8 at PageID 17; ECF No. 32 at PageID 564.) Further, Plaintiff did not disclose any other instances of similar comments by Ms. Morella at his deposition. (*Id.*) He, however, now submits in his affidavit that Ms. Morella repeatedly asked him when he would retire. (*Id.*; ECF No. 30-21 at PageID 454.)

Plaintiff's response to Defendant's objection is not a paragon of clarity. Plaintiff seemingly argues that the testimony in his affidavit does not **directly** contradict any prior testimony. (ECF No. 33 at PageID 569.) Thus, Defendant's argument is without merit. (*Id.*)

It is well-accepted that an opposing party cannot create an issue of fact by submitting an affidavit in response to a summary judgment motion that contradicts prior testimony. *See Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 906 (6th Cir. 2006) (citing *Penny v. United Parcel Service*, 128 F.3d 408, 415 (6th Cir. 1997)). In determining the admissibility of a post-deposition affidavit, the Court "must first determine whether the affidavit **directly contradicts** the nonmoving party's prior sworn testimony." *Id.* at 908 (emphasis added). However, if the proffered affidavit does not directly contradict prior testimony, the Court should only disregard the affidavit if it was submitted in an "attempt to create a sham fact issue." *Id.* (citing *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986)). The Court looks to a non-exhaustive list of factors such as whether the affiant was cross-examined when he offered the earlier testimony, whether the

statement was based on new evidence, or whether the affiant was confused during the earlier testimony to determine whether the affidavit should be disregarded. *Id.* at 909.

In looking at the pertinent testimony, the Court disagrees with Defendant's assertion that Plaintiff is attempting to create an issue of fact by asserting contradictory testimony in his affidavit. Plaintiff was asked the following questions at his deposition:

> Q: Okay. In the Complaint, you mention that [Ms. Morella] said something along the lines, "I bet you wished you had retired."
> A: Yes.
> Q: Tell me about that comment. Which meeting was that and—
> A: That was a meeting on that Friday.
> Q: Okay. So this was when it was Cliff and Diana?
> A: Right before Cliff entered the room.
> Q: Okay. So no one else heard her make that comment?
> A: No.

(ECF No. 31-3 at PageID 556.) That is the entirety of the inquiry into any comments made by Ms. Morella concerning Plaintiff's retirement based on the record before the Court.

Rather than asserting contradictory facts, Plaintiff appears to assert facts that Defendant did not inquire into. This is permissible. *See Aerel, S.R.L.*, 448 F.3d at 907 (explaining that nothing prevents a party "who was not directly questioned about an issue from supplementing incomplete deposition testimony with a sworn affidavit"). Thus, Defendant's objection is not well-taken.

## II. *Whether Plaintiff's affidavit contains inadmissible evidence*

Defendant's second evidentiary objection argues that Plaintiff's affidavit contains inadmissible hearsay or asserts speculative facts. (ECF No. 32 at PageID 565.) Specifically, Defendant argues that Plaintiff offers his own speculative and conclusory opinions concerning punch corrections. (*Id.*) Further, the affidavit contains inadmissible hearsay statements from Randy Logan. (*Id.*)

Plaintiff responds by arguing that his opinions concerning punch corrections are based on his personal knowledge and thus are admissible. (ECF No. 33 at PageID 570.) Further, Mr. Logan's statement constitutes an admission by a party opponent. (*Id.* at PageID 569–70.)

To the extent that Defendant seeks to strike Plaintiff's statements based on his purported knowledge, the Court will not grant such relief. Defendant is correct that "in order to survive summary judgment, Plaintiff cannot rely on conjecture or conclusory accusations." *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) (citing *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)); *Gooden v. City of Memphis Police Dep't*, 67 F. App'x 893, 895 (6th Cir. 2003) Plaintiff, however, can testify to matters based on his personal knowledge, which he purports to do here. *See* Fed. R. Civ. P. 56(c)(4); F.R.E. 602, 701; *see also Bailey*, 106 F.3d at 145 ("The proffered evidence need not be in admissible *form,* but its *content* must be admissible." (emphasis in original)). It is just that his testimony alone is not sufficient to defeat a well-supported summary judgment motion. *See Gooden*, 67 F. App'x at 895. Accordingly, Defendant's request to strike this testimony is unwarranted. Instead, the Court will keep the above principle in mind when examining Defendant's motion.

The Court next turns to the statements by Mr. Logan. According to Plaintiff, Mr. Logan informed him that he never complained to Ms. Morella and that he was promised a senior management position once Plaintiff left. (ECF No. 30-21 at PageID 454.) Defendant argues that this statement is inadmissible hearsay. (ECF No. 32 at PageID 565.) Plaintiff asserts that this statement qualifies as an admission by a party opponent under Federal Rule of Evidence 801(d)(2)(C). (ECF No. 33 at PageID 569–70.)

The Court finds the statement by Mr. Logan inadmissible. Federal Rule of Evidence 801(d)(2)(C) provides that a party opponent's statement is non-hearsay if it "was made by a person

whom the party authorized to make a statement on the subject." Plaintiff's argues that, because Mr. Morella referenced complaints from Mr. Logan at her deposition, Mr. Logan was then authorized to speak to Plaintiff. (ECF No. 33 at PageID 570.) Plaintiff misunderstands the rule. *See Precision Piping & Innstruments, Inc. v. E.I. du Pont de Nemours and Co.*, 951 F.2d 613, 619 (4th Cir. 1991) ("[A]uthority in the context of 801(d)(2)(C) means 'authority to speak' on a particular subject on behalf of someone else."); Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure Evidence*, § 6775 (2021 ed.) ("In all such cases, there must be a showing, either general or specific, that the party authorized the declarant to speak on the subject to satisfy the rule."). Simply, there is no evidence that Mr. Logan was authorized by Defendant to speak on the subject.[9] The viability of this argument becomes more dubious when the Court considers the factual circumstances surrounding the statement: Mr. Logan purportedly made this statement while away from work at a barber shop. Accordingly, the Court finds that Plaintiff has not introduced evidence demonstrating the admissibility of Mr. Logan's statement at this juncture.

**B. Defendant's Motion for Summary Judgment**

Having dealt with these evidentiary objections, the Court now addresses the merits of Defendant's motion. As previously stated, Plaintiff alleges unlawful discrimination due to his race, age, and gender. The Court will take up his gender discrimination claim first before moving onto to the claim based on race discrimination. The Court will then address Plaintiff's age discrimination claim last.

    I.    *Plaintiff's Gender Discrimination Claim*

---

9. The Court is similarly skeptical that this statement by Mr. Logan would qualify under Federal Rule of Evidence 801(d)(2)(D).

Title VII prohibits employers from discriminating against their employees on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A claim of discrimination can be supported either through direct or circumstantial evidence. *See Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 648–49 (6th Cir. 2012) (citing *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2012)). "Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Id.* On the other hand, indirect or circumstantial evidence allows for a reasonable factfinder to infer that discrimination occurred. *Id.*

Here, Plaintiff has not asserted that direct evidence exists demonstrating gender discrimination; thus, he instead must rely on circumstantial evidence to prove his claim. *See Johnson v. Metro. Gov't of Nashville & Davidson Cty.*, 502 F. App'x 523, 535 (6th Cir. 2012). Under this approach, the Court applies the "the familiar *McDonnell Douglas* framework." *Arendale*, 519 F.3d at 603; *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 303 (6th Cir. 2016). Normally, a *prima facie* case alleging gender discrimination requires that the plaintiff show that: "1) he is a member of a protected class; 2) was qualified for the job; 3) he suffered an adverse employment decision; and 4) was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *See Arendale*, 519 F.3d at 603 (quoting *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001)). However, because Plaintiff is male, "that is, he is a member of the majority claiming employment discrimination," *id.*, he must instead show that Defendant "is that unusual employer who discriminates against the majority." *Johnson*, 502 F. App'x at 536.

Once Plaintiff makes this *prima facie* showing, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason justifying its action. *Id.* In turn, if Defendant meets this burden, Plaintiff then must prove that the stated reason was pretext. *Id.*

Defendant first argues that Plaintiff's gender discrimination claim fails because he has not identified an appropriate female comparator. (ECF No. 27-1 at PageID 86.) Next, Defendant asserts that it had a legitimate, nondiscriminatory reason to terminate Plaintiff. (*Id.*) Finally, Defendant contends that Plaintiff cannot establish pretext because of the "honest belief rule." (*Id.* at PageID 86, 91–93.) It appears that Defendant does not contest any other elements of Plaintiff's *prima facie* case. Thus, the Court will not discuss those elements.

In response, Plaintiff first argues that he has identified an appropriate female comparator. (ECF No. 30 at PageID 308.) Next, he attempts to undercut the legitimacy of Defendant's asserted reason for his termination. (*Id.* at PageID 313–14.) Finally, Plaintiff asserts that, regardless of the asserted reason, that reason was pretext.

The Court starts (and ends) its analysis at whether Plaintiff has identified an appropriate female comparator. As part of his *prima facie* case, Plaintiff must establish that he was either replaced by an individual outside of his protected class or that he was treated differently from a similarly situated female employee. *See Arendale*, 519 F.3d at 603. Plaintiff cannot show that he was replaced by a member outside of the protected class because it is undisputed that Plaintiff was replaced by a male. (ECF No. 31-2 at PageID 550.) Thus, Plaintiff must prove that he was treated differently than a similarly situated female employee. *See Arendale*, 519 F.3d at 603; *Kinch v. Pinnacle Foods Grp., LLC*, 758 F. App'x 473, 478 (6th Cir. 2018).

"To establish that an employee is similarly situated to a plaintiff, 'the plaintiff [must] demonstrate that he or she is similarly situated to the [claimed comparator] in

all *relevant* respects.'" *Perkins v. Harvey*, 368 F. App'x 640, 644 (6th Cir. 2010) (alterations and emphasis in original) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998)); *see also McMillan v. Castro*, 405 F.3d 405, 413–414 (6th Cir. 2005). "In the disciplinary context, employees are similarly situated if they deal with the same supervisor, are held to the same standards, and engage in the same conduct such that no differentiating or mitigating circumstance distinguishes their conduct or the employer's treatment of them for it." *Kinch*, 758 F. App'x at 479 (citing *Ercegovich*, 154 F.3d at 352.)

Here, Plaintiff's chosen comparator, Brenda Holliday-Lewis (a Black female), is not an appropriate comparator because Plaintiff cannot establish that the two engaged in similar conduct. It is true that Ms. Holliday-Lewis and Plaintiff have several things in common that, at first blush, would indicate she is an appropriate comparator. Both Plaintiff and Ms. Holliday Lewis were supervised by Ms. Morella and Ms. Jones. (ECF No. 31-2 at PageID 545.) Next, both were Senior Team Leads at Target. (*Id.*) Finally, Ms. Holliday-Lewis asserts that—despite working in different departments—she shared similar job responsibilities with Plaintiff as Senior Team Leads. (ECF No. 30-10 at PageID 426.)

Even so, Plaintiff's claim fails because he failed to demonstrate that the two engaged in the same relevant conduct. *See Kinch*, 758 F. App'x at 479. As Defendant correctly points out in its motion, Plaintiff has not established that Ms. Holliday-Lewis received similar complaints about taking excessive and prolonged break nor that she submitted similar incorrect punches. (ECF No. 27-1 at PageID 87; ECF No. 31 at PageID 516–517.) Without this evidence establishing that Ms. Holliday-Lewis engaged in similar conduct yet received different treatment, the Court has no marker by which to gauge Defendant's conduct.

Plaintiff arguments to the contrary are unavailing. In addition to the facts stated above, Plaintiff also argues that Ms. Holliday-Lewis submitted punch corrections like Plaintiff to comply with Target's meal-break policy. (ECF No. 30 at PageID 311.) Plaintiff, however, offers no specifics concerning Ms. Holliday-Lewis's punch corrections nor does he explain if she was investigated for similar violations like the ones Plaintiff admitted he committed. Without more, Plaintiff has failed to establish that Ms. Holliday-Lewis is an appropriate comparator. *See Kinch*, 758 F. App'x at 479 ("[E]mployees are similarly situated if. . . [they] engage in the same conduct such that no differentiating or mitigating circumstance distinguishes their conduct or the employer's treatment of them for it.").[10]

Plaintiff needed to show that Ms. Holliday-Lewis engaged in similar conduct yet received a different result. *See Leadbetter v. Gilley*, 385 F.3d 683, 691 (6th Cir. 2004); *see also Campbell v. Hamilton Cty.*, 23 F. App'x 318, 325 (6th Cir. 2001). He did not. Accordingly, his claim for gender discrimination fails. The Court, therefore, **GRANTS** Defendant's motion as to Plaintiff's gender discrimination claim.

II. *Plaintiff's race discrimination claim*

Title VII also protects against discrimination on the basis of race. *See* 42 U.S.C. § 2000e-2(a)(1). Like a claim for gender discrimination, a Title VII plaintiff claiming race discrimination can rely on either direct or circumstantial evidence. *See Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 302 (6th Cir. 2016.)

a) Direct evidence

---

10. To the extent that Plaintiff and Ms. Holliday-Lewis received different treatment, those differences are immaterial to the Court's analysis. (*See* ECF No. 30 at PageID 311–12.) As a threshold requirement, Plaintiff needed to identify a comparator who was "similarly situated. . .in all relevant respects" before the Court even broaches the issue of different treatment. *Perkins*, 368 F. App'x at 644. The Court finds that he did not.

Plaintiff asserts that he has put forth direct evidence establishing that Defendant discriminated against him due to his race. (ECF No. 30 at PageID 316.) Plaintiff points to the following facts: (1) Ms. Morella's alleged comment to Plaintiff and Mr. Cain about the " horror that she would feel if one of her daughters dated a black male;" (2) Ms. Morella's directive to Plaintiff to assign hard jobs to Black workers; (3) Ms. Morella's statement that she only received complaints from Black workers concerning Plaintiff's excessive and prolonged breaks; (4) the fact that Ms. Morella informed Plaintiff about a sexual harassment complaint levied against him but asked him not to act on it; (5) the fact that Ms. Jones claimed not to know Plaintiff's race; (6) the fact that Ms. Jones claimed not to know the race of Plaintiff's replacement despite having worked with him before; and (7) Ms. Jones' inconsistent testimony. (ECF No. 30 at PageID 316–17.)

As noted earlier, direct evidence "if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003). Here, the proffered evidence by Plaintiff fails to warrant this result. Take first the alleged comment by Ms. Morella. (*See* ECF No. 30 at PageID 316; *see also* ECF No. 31-2 at PageID 535.) Plaintiff states that this comment occurred in late 2016. (ECF 31-2 at PageID 535.) Plaintiff, however, was not terminated until March 2018. (*Id.* at PageID 535, 550.) This lapse of time between this disputed comment and the alleged unlawful employment action undercuts its probative value. *See Clack v. Rock-Tenn Co.*, 304 F. App'x 399, 405 (6th Cir. 2008) ("The timing of any remarks, specifically how remote in time they were to the employment action at issue, also has bearing on their relevance.") (citing *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998)). Further, given that this statement did not directly relate to Plaintiff but instead dealt with hypothetical social relationships, an inference is needed to establish that Ms. Morella's alleged feelings influenced the decision to terminate Plaintiff.

Turning to the remaining comments or actions by Ms. Morella, these also fail to qualify as direct evidence of racial animus. (ECF No. 30 at PageID 316.) First, these comments did not occur in the context of Plaintiff's termination. *See Tennial*, 840 F.3d at 302 (citing *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 464 and *Worthy v. Mich. Bell Tel. Co.*, 472 F. App'x 342, 347 (6th Cir. 2012)). Second, these comments either did not directly relate to Plaintiff or do not denote racial animus at face value. *Id.*

The Court reaches the same conclusion concerning the facts related to Ms. Jones. (*See* ECF No. 30 at PageID 316–17.) First, Plaintiff conflates direct evidence with circumstantial evidence. Plaintiff states that his proffered evidence concerning Ms. Jones "permits the inference of racial discrimination." (*Id.* at PageID 317.) But with direct evidence, "no inferences are needed in order to conclude that racial discrimination is afoot." *Tennial*, 840 F.3d at 302 (citation omitted). Second, a reasonable factfinder would still have to make a chain of inferences to conclude that this proffered evidence demonstrates Ms. Jones' animus toward Plaintiff. Accordingly, Plaintiff has failed to put forth direct evidence.

      b) Indirect evidence

To determine whether Plaintiff has set forth a *prima facie* case for racial discrimination using indirect evidence, the Court applies the *McDonnell Douglass* framework. *See Tennial*, 840 F.3d at 303. The Court recounted this standard previously when addressing Plaintiff's gender discrimination claim. Again, Defendant appears to only contest whether Plaintiff can establish pretext. (ECF No. 27-1 at PageID 93.) Defendant asserts that Plaintiff cannot prove pretext due to the "honest belief rule" and that Plaintiff failed to identify other employees outside his protected class that were not terminated for similar conduct. (*Id.* at PageID 94.) Accordingly, the Court will focus its analysis there.

Plaintiff responds by arguing that Defendant's "articulated reason to justify Anderson's termination is simply not worthy of belief and has absolutely no basis in fact." (ECF No. 30 at PageID 317.) Notably, Plaintiff does not address Defendant's invocation of the honest belief rule nor does he tackle Defendant's assertion that Plaintiff failed to identify members outside of Plaintiff's protected class who received better treatment for similar conduct.

### i. Defendant's reason for terminating Plaintiff

The Court first turns to Defendant's proffered reason for terminating Plaintiff—that he submitted false documentation concerning his punches. (*See* ECF No. 27-1 at PageID 90, 94.) It is undisputed that on February 26, 2018, Plaintiff made the following time punches: 11:30 a.m., 5:15 p.m., 5:46 p.m. and 10:48 p.m. (ECF No. 30-1 at PageID 333.) It is also undisputed that Plaintiff left the store on February 26, 2018, at 5:59 p.m. and did not return until 6:25 p.m. (*Id.*) Plaintiff admits that it appears that he violated Target's meal-break policy by taking a break longer than the thirty (30) minutes allowed. (*Id.*)

Similarly, Plaintiff admits that it appears that he violated that same policy concerning his punches on March 12, 2018. (*Id.* at PageID 335.) Plaintiff made the following punches on that day: 12:00 p.m., 5:35 p.m., 6:06 p.m., and 8:39 p.m. (*Id.*) Plaintiff admits that surveillance footage shows him leaving the store at 6:13 p.m. and not returning until 6:54 p.m. (*Id.*) The investigation into these two dates conducted by Mr. Alexander concluded that Plaintiff committed time theft. (*Id.* at PageID 333–34.) Plaintiff has not challenged Mr. Alexander's findings.

Further, it is undisputed that it is a terminable offense to submit falsified documentation. (ECF No. 30-1 at PageID 328); *see also Parson v. FedEx Corp.*, 360 F. App'x 642, 648 (6th Cir. 2010) (concerning a plaintiff who had been terminated for submitting falsified company documents). Building on that, courts in this circuit have found that terminating an employee for

time theft is a legitimate, nondiscriminatory reason. *See Williams v. PVACC, LLC*, 369 F. App'x 667, 671 (6th Cir. 2010); *Mugno v. Wal-Mart Stores, Inc.,* No. 2:07-CV-199, 2009 WL 737107, at *4 (E.D. Tenn. Mar. 20, 2009). Similarly, this Court finds that Defendant has asserted a legitimate non-discriminatory reason for Plaintiff's termination.

ii.    Pretext

Now that Defendant has set forth a legitimate, nondiscriminatory reason for Plaintiff's termination, the burden falls on Plaintiff to "identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination." *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 779 (6th Cir. 2016) (quoting *Provenzano v. LCI holdings, Inc.*, 663 F.3d 806, 812 (6th Cir. 2011)); *see also Tennial*, 840 F.3d at 303 (6th Cir. 2016).

A plaintiff can prove that a defendant's reason was pretext "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Provenzano*, 663 F.3d at 815 (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003)). "The three-part test need not be applied rigidly. Rather, '[p]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?'" *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 285 (6th Cir. 2012) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009)).

Plaintiff asserts that Defendant's proffered reason is "simply not worthy of belief and has absolutely no basis in fact." (ECF No. 30 at PageID 317.) It appears that Plaintiff invokes just one of three ways in which he can prove pretext— that Defendant's reason has no basis in fact.

However, for the sake of thoroughness, the Court will briefly address the other two ways in which Plaintiff can prove pretext. Ultimately, Plaintiff cannot prove pretext under these routes either.[11]

In addition to the evidence discussed above concerning direct evidence of racial discrimination, Plaintiff also points to examples involving Target employees who were terminated for committing time theft. (*Id.* at PageID 313.) According to Plaintiff, these examples demonstrate that Defendant treated meal violations differently from time theft. (*Id.*) Plaintiff also points out that Defendant did not provide an example of an employee being terminated for committing a meal violation. (*Id.*) Further, Plaintiff argues that the punches he submitted to comply with the meal-break policy were a common occurrence at Target and that team members, like Ms. Holliday-Lewis, submitted similar corrections. (*Id.* at PageID 314.) All in all, Plaintiff asserts that Defendant "conflated its long-standing practice of correcting meal violations to comply with the six-hour policy with the terminable offense of falsifying documents" to discriminate against him. (*Id.* at PageID 314.)

The Court first turns to Plaintiff's argument that Defendant's decision had no basis in fact. (ECF No. 30 at PageID 314.) This line of attack by Plaintiff is "essentially an attack on the credibility of the employer's proffered reason ... [and] consists of showing that the employer did not actually have cause to take adverse action against the employee based on its proffered reason, and thus, that the proffered reason is pretextual." *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012) (alterations in original) (quoting *Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 787, 791 (6th Cir. 2006)). This argument fails for two reasons. One,

---

11. In arguing that Defendant's reason was pretext as part of his race discrimination claim, Plaintiff does not reassert the same arguments that he made concerning pretext that he made for his gender discrimination claim. (*See* ECF No. 30 at PageID 313, 317.)

Defendant's had a basis in fact. Second, Plaintiff has not overcome Defendant's invocation of the honest belief rule.

After review of the record before the Court, it appears that Plaintiff's punches did not accurately correspond to his time spent working. In other words, Plaintiff's punches do not reflect his time away from the store. It is undisputed that falsifying company documents is a terminable offense. (ECF No. 30-1 at PageID 328.) The Court also draws attention to the fact that Plaintiff admitted that it appeared that he violated Target's policies. (ECF No. 30-1 at PageID 333–35.) Accordingly, Defendant's had a basis in fact to conclude Plaintiff submitted false time punches.

Moreover, Defendant has properly invoked the honest belief rule. (*See* ECF No. 27-1 at PageID 91.) The honest belief rule stands for the principle that "where the employer can demonstrate an honest belief in its proffered reason . . . the inference of pretext is not warranted." *Seeger*, 681 F.3d at 285 (citation omitted). To properly invoke this rule, Defendant must "establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Blizzard*, 698 F.3d at 286 (citations omitted). In turn, Plaintiff must "allege more than a dispute over the facts upon which his discharge was based. He must put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001) (quoting *Smith v. Chrysler,* 155 F.3d 799, 906–07 (6th Cir. 1998)).

Here, Plaintiff has not introduced evidence which negates the application of the honest belief rule. The Court points to the fact that it is undisputed that Plaintiff met with management at his store on three (3) different occasions concerning the dates at issue. (ECF No.30-1 at PageID 336–337.) Further, on each of these occasions, Plaintiff was asked to explain his actions, and he did not offer an explanation at any of these meetings. (*Id.*)

Based on these facts, Defendant has introduced evidence that it made its decision to terminate Plaintiff based on the "particularized facts that were before it at the time the decision was made." *Blizzard*, 698 F.3d at 286 (citations omitted). In response, Plaintiff has offered no probative evidence that those involved in his termination did not "honestly believe" in the proffered reason. *Braithwaite*, 258 F.3d at 494.

The Court will briefly address the remaining ways in which Plaintiff could prove pretext. A plaintiff can prove a party's asserted reason was pretext by arguing that the reason was "insufficient motivation for the employment action." *Joostberns*, 166 F. App'x at 791. This argument normally "consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

Here, the only examples that Plaintiff can seemingly rely on involve team members who were terminated for their purported violations. (ECF No. 30 at PageID 313.) To rely on these team members as examples, however, gets the analysis backwards. The pertinent question is whether other employees engaged in similar conduct as Plaintiff but **were not terminated**. *See Joostberns*, 166 F. App'x at 791. Notably, these employees did not engage in similar conduct as Plaintiff. *C.f. Blizzard*, 698 F.3d at 286–87 ("Thomas's mistakes were not *substantially* identical to those made by Blizzard."). Moreover, the employees who were terminated were not senior team leads like Plaintiff. It is undisputed that Plaintiff as a senior team lead was held to a higher standard than just a regular team member. (ECF No. 30-1 at PageID 323); *see also Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 329 (6th Cir. 2021) ("[E]mployees who are in higher positions can be held to higher standards."). And as one last point, the Court notes that both Black and White

employees were terminated for committing time theft. (ECF No. 27-16 at PageID 286.) Accordingly, Plaintiff cannot prove pretext via this route.

As the last route, a plaintiff can prove pretext by showing that the asserted reason did not actually motivate the defendant. *See Manzer*, 29 F.3d at 1084. This line of attack "admits that the [proffered] reason could motivate the employer but argues that the illegal reason is more likely than the proffered reason to have motivated the employer." *Joostberns*, 166 F. App'x at 791 (citing *Manzer*, 29 F.3d at 1084). "In other words, . . . the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Id.*

Plaintiff has not introduced sufficient evidence demonstrating that it is "more likely than not" that Defendant's proffered reason is pretextual. First, the Court draws attention to the fact that the investigation into Plaintiff's punches was conducted by ETL-AP Gary Alexander (a Black male). (ECF No. 30-1 at PageID 332.) Second, although Plaintiff asserts that Ms. Jones was the individual who terminated him, he offers no evidence that Ms. Jones was involved in the investigation nor the decision to terminate him.[12] (ECF No. 30-1 at PageID 337.) Also, the presence of Cliff Townsend, the Store Director, at two of the three meetings supports the conclusion that a discriminatory animus did not play a role in Plaintiff's termination. Plaintiff has made no aspersions concerning Mr. Townsend's motives or feelings. And finally, this argument might fare better had Plaintiff actually explained his actions.

---

12. As with other objections, Plaintiff did not properly support his objection to Defendant's Statement of Fact 61. First, Plaintiff cites deposition testimony from Ms. Jones that is not in the record. Second, Plaintiff's affidavit does not speak to whether Ms. Jones participated in the investigation into Plaintiff's time punches. And finally, the testimony cited by Plaintiff of Ms. Morella explicitly states that Ms. Jones was not with Ms. Morella when she approached Mr. Alexander. Accordingly, the Court treats this statement of fact as admitted.

After review of the evidence, Plaintiff fails to establish that Defendant's proffered reason was pretext. Thus, he has not presented a *prima facie* claim concerning racial discrimination. As such, the Court **GRANTS** Defendant's motion as to this claim.

III.    *Plaintiff's age discrimination claim*

As his final claim, Plaintiff alleges that Defendant discriminated against him due to his age. The ADEA prohibits discrimination based on age. *See Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 305 (6th Cir. 2016). An ADEA plaintiff can support her claim with either direct or circumstantial evidence. *See Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 324 (6th Cir. 2021). If direct evidence is not available, the Court analyzes the plaintiff's claim under the *McDonnel Douglas* framework. *Id.* at 326. Notably, unlike in the Title VII context, Plaintiff must show that his age was the "but for" cause for his termination. *See Provenzano*, 663 F.3d at 811. Meaning, Plaintiff's age must be the reason Defendant decided to act. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009).

Here, Defendant again focuses its attack on whether Plaintiff can establish pretext. (ECF No. 27-1 at PageID 95–96.) Thus, the Court will devote its energy in addressing whether Plaintiff can establish pretext.[13]

In arguing that Plaintiff cannot establish pretext, Defendant reasserts its prior argument that the honest belief rule applies. Defendant further asserts that it has set forth evidence of employees under forty (40) who were terminated for submitting false documentation like Plaintiff. (*Id.* at PageID 95–96.)

---

13.    As explained earlier, the Court finds that Defendant has articulated a legitimate, nondiscriminatory reason for Plaintiff's termination.

Plaintiff does not address Defendant's pretext argument; instead, he devotes his briefing to argue that "but for" causation exists. (ECF No. 30 at PageID 318–319.) In making this argument, Plaintiff points to repeated inquires by Ms. Morella during 2017 about when Plaintiff would retire. (*Id.* at PageID 318.) He also points to the statement by Ms. Morella that "I bet you wish you had retired now" made at his termination meeting. (*Id.* at PageID 319.) Further, Plaintiff relies on an alleged statement by Ms. Jones that she planned to replace Plaintiff with a younger individual.[14] (*Id.* at PageID 318–19.)

As stated above, Plaintiff can prove pretext "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Provenzano*, 663 F.3d at 815.

First, the Court has already found that Defendant's decision to terminate Plaintiff had a basis in fact. Further, Defendant properly invoked the honest belief rule. Thus, the Court will not repeat its analysis here.

Next, the Court finds that Plaintiff has not put forth evidence showing that Defendant's reason did not actually motivate its decision to terminate Plaintiff. Take first Ms. Jones' alleged comment. It is true that "discriminatory remarks may serve as evidence of pretext because they indicate the presence of animus toward a protected group." *Vincent v. Brewer Co.*, 514 F.3d 489, 498 (6th Cir. 2007) (citing *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 320 (6th Cir. 2007)). However, the probative value of Ms. Jones' alleged comment is undercut by the fact that Plaintiff has failed to adduce evidence that she played any role in the decision to terminate Plaintiff or in the decision to investigate him. *See Geiger v. Tower Auto.*, 579 F.3d 614, 621 (6th Cir. 2009)

---

14. It is undisputed that Plaintiff was indeed replaced by a White male under forty (40). (ECF No. 30-1 at PageID 339.)

("Statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden ... of demonstrating animus.") (alteration in original) (quoting *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998)); *Blizzard*, 698 F.3d at 287.

Second, the comments by Ms. Morella do not push Plaintiff over the threshold either. As an initial matter, Plaintiff fails to identify with any particularity any other comments by Ms. Morella outside of her comment at Plaintiff's termination meeting. Instead, his affidavit contains a blanket assertion that Ms. Morella "repeatedly asked me when I was going to retire." (ECF No. 30-21 at PageID 454.) "In determining the materiality of allegedly discriminatory statements, [courts] consider four factors, none of which are dispositive: (1) whether the statements were made by a decision-maker . . .; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the act of termination." *Pelcha*, 988 F.3d at 325 (internal quotations omitted) (quoting *Diebel v. L & H Res., LLC*, 492 F. App'x 523, 527 (6th Cir. 2012)); *see also Ercegovich*, 154 F.3d at 355–56.

Plaintiff's failure to elucidate his claims proves critical here. Without more, there is no way to determine the probative value of these comments because questions about retirement alone are not probative on whether discriminatory animus exists. *See Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 247 (6th Cir. 1997) ("However, as the district court noted, these questions about his plans for the future do not amount to evidence that Woythal's age was the reason for his departure[.]"); *see also Metz v. Titanium Metals Corp.*, 475 F. App'x 33, 35 (6th Cir. 2012); *Mastellone v. Publix Super Mkt., Inc.*, 179 F. Supp. 3d 784, 797 (E.D. Tenn. 2016). The Court cannot gather from the record the context in which these comments occurred, the tone of these

comments, if these comments ceased, or if these comments bear any connection to the decision to terminate Plaintiff. *See Geiger*, 579 F.3d at 621; *see also Blizzard*, 698 F.3d at 285 ("[T]he plaintiff has the burden to produce 'sufficient evidence from which a jury could reasonably reject [the employer's] explanation of why it fired her.'") (citation omitted).

This leaves the comment by Ms. Morella to Plaintiff that "I bet you wish you had retired now" as Plaintiff's only concrete example of any potential age-discrimination. This is not sufficient evidence. Several facts support this conclusion. First, the investigation that eventually led to Plaintiff's termination was conducted by ETL-AP Gary Alexander, a Black male. Plaintiff has made no aspersions questioning Mr. Alexander's motives or the results of his investigation. Next, Plaintiff had three (3) opportunities to explain his actions. He did not. Further, the presence and involvement of the Store Director Mr. Townsend in Plaintiff's termination makes it less likely that Defendant relied on a discriminatory reason. Plaintiff has made no suggestions that Mr. Townsend harbored any discriminatory animus against him. Further, outside of this comment by Ms. Morella, Plaintiff points to no other probative evidence calling into question Defendant's proffered reason. Thus, Plaintiff has failed to meet his burden.

Finally, the Court finds that Defendant's proffered reason was not insufficient to justify Plaintiff's termination. To make this argument, a plaintiff usually points to "other employees, particularly employees not in the protected class, were not fired even though they were engaged in substantially identical conduct" which resulted in the plaintiff's termination. *Blizzard*, 698 F.3d at 286–87. Here, Plaintiff has not pointed to any other employee who engaged in similar conduct but was not terminated. Indeed, all the examples Plaintiff could cite were employees who were terminated. As mentioned above, this argument is backwards.

After review, Plaintiff cannot marshal sufficient, probative evidence showing that Defendant's proffered reason was pretextual. In the ADEA context, Plaintiff needed to show that his age was the "but-for" cause of his termination. *See Provenzano*, 663 F.3d at 818. He did not. The only relevant evidence is Plaintiff's general reference to comments made by Ms. Morella concerning his plans to retire and her comment at his termination meeting. This is not enough to meet the ADEA's "but-for" standard. Accordingly, Defendant's motion is **GRANTED** as to this claim.

<u>Conclusion</u>

For the reasons stated herein, Defendant's Motion for Summary Judgment, (ECF No. 27), is **GRANTED**. Judgment will be entered in favor of Defendant and this matter will be **DISMISSED WITH PREJUDICE**

**IT IS SO ORDERED**, this the 25th day of June, 2021.

*s/ Mark Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE